LEADER FEDERAL SAVINGS AND LOAN ASSOCIATION OF MEMPHIS AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leader Federal Sav. & Loan Ass'n v. Commissioner
Docket Nos. 44110-86, 44490-86
United States Tax Court
T.C. Memo 1991-334; 1991 Tax Ct. Memo LEXIS 385; 62 T.C.M. (CCH) 201; T.C.M. (RIA) 91334; July 22, 1991, Filed *385 An appropriate Order will be issued and decisions will be entered under Rule 155. Richard L. Bacon, for the petitioner. Nancy B. Romano, for the respondent. WELLS, Judge. WELLS
MEMORANDUM OPINION The instant consolidated cases (hereinafter, the instant case) are before us on the parties' cross-motions for summary judgment pursuant to Rule 121. [1] Respondent determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1967
$     5,785
1970
271,732
1977
1,415,921
1978
2,734,790
1979
1,838,081
1980
405,593
After deciding the other issues in the instant case in an opinion rendered on July 3, 1989, T.C. Memo 1989-321, the remaining issue that must be decided in this Opinion is whether certain portions of section 1.593-6A(b) (5)(vi) and (vii), Income Tax Regs., are valid. For certain financial institutions, including petitioner, during the years in issue, the deduction for addition to bad debt reserve is generally equal to a percentage of the financial institution's taxable income. The challenged portions of the regulation require that taxable income reflect any net operating loss carrybacks before the deduction *386 for addition to bad debt reserve is calculated.
Summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121. No dispute exists with respect to any material question of fact. Accordingly, summary judgment is appropriate with respect to the issue remaining in the instant case. Petitioner had its principal place of business in Memphis, Tennessee, when it filed its petitions. During the years in issue, petitioner deducted additions to a reserve for bad debts. Petitioner calculated those amounts by using the "percentage of taxable income method" set forth in section 593(b) (2)(A). For those years, section 166(c) permitted taxpayers to deduct a "reasonable addition" to bad debt reserve, in lieu of specific debts as they *387 became worthless. Section 593(b) defined the term "reasonable addition" for certain financial institutions, including petitioner. Under that subsection, the deduction for addition to reserve with respect to "qualifying real property loans" (generally those loans secured by improved real property (section 593(d)) was subject to various limits, one of which was set forth in section 593(b)(2)(A). That provision limited the deduction to "the applicable percentage of the taxable income" for the year. [2]
*388 Central to resolution of the instant case is the interplay between NOL carrybacks and the deduction for addition to bad debt reserve calculated under the percentage of taxable income method. Respondent relies on subsections (vi) and (vii) of section 1.593-6A(b) (5), Income Tax Regs. The provisions generally require that taxable income reflect any NOL carrybacks before the deduction for addition to bad debt reserve is calculated. Specifically, the pertinent portions of the regulation provide as follows: (5) Computation of taxable income. For purposes of * * *[calculating the deduction for addition to bad debt reserve under the percentage of taxable income method], taxable income is computed-- * * *
(vi) For taxable years beginning before January 1, 1978, without regard to any deduction the amount of which is computed upon, or may be subject to a limitation computed upon, the amount of taxable income, and without regard to any net operating loss carryback to such year from a taxable year beginning before January 1, 1979. (For purposes of this subparagraph, a net operating loss deduction under section 172 is not a deduction the amount of which may be subject to a limitation *389 computed upon the amount of taxable income.) (vii) For taxable years beginning after December 31, 1977, by taking into account any deduction the amount of which is computed upon, or may be subject to a limitation computed upon, the amount of taxable income, and any other deduction or loss allowed under subtitle A of the Code, such as any deduction allowable under section 172 or any loss allowable under section 1212(a), unless otherwise provided in this subparagraph.
For taxable years beginning after December 31, 1977, subdivision (vii) expressly requires that taxable income reflect the section 172(a) deduction prior to calculating the deduction for addition to bad debt reserve. For taxable years beginning before January 1, 1978, subdivision (vi) requires, by negative implication, that taxable income reflect NOL carrybacks from years beginning after December 31, 1978, prior to calculating the deduction. As originally promulgated on May 17, 1978, the ordering rule was to affect only taxable years beginning after December 31, 1977. T.D. 7549, 1978-1 C.B. 185, 186. Proposed amendments to the regulation would have required retroactive use *390 of the ordering rule for NOLs occurring after 1977 (43 Fed. Reg. 60964 (1978)), but the regulation was amended on May 30, 1979, to have retroactive effect only for NOLs occurring after 1978. T.D. 7626, 1979-2 C.B. 239, 240. Petitioner contends that the foregoing provisions are invalid and that it should be permitted to use the ordering rule in effect prior to publication of the regulation containing the challenged provision on May 17, 1978. The ordering rule proposed by petitioner requires calculation of the deduction for addition to bad debt reserve before any NOL carrybacks are reflected in the calculation of taxable income. The only issue presented in the instant case was addressed by this Court in Pacific First Federal Savings Bank v. Commissioner, 94 T.C. 101 (1990), on appeal F.2d (9th Cir. 1991). Pacific First Federal was followed in Peoples Federal Savings & Loan Association v. Commissioner, T.C. Memo 1990-129. Peoples Federal was appealed to the Sixth Circuit on August 17, 1990. The instant case is also appealable to the Sixth Circuit. In Pacific First Federal *391 , we held that the reversal of the ordering rule by the Secretary violated Congressional intent and was therefore an invalid exercise of the Secretary's rule-making authority. Respondent asks that we reconsider our holding in Pacific First Federal, which we decline to do. We will not repeat here our reasons for reaching that conclusion. Our holding in Pacific First Federal that the challenged provisions of section 1.593-6A(b)(5)(vi) and (vii), Income Tax Regs., are invalid disposes of the only issue in the instant case. We therefore grant summary judgment in favor of petitioner. [3]
To reflect the foregoing and our prior opinion, Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. During relevant times, the portions of section 593 pertinent to the instant case provided as follows: (b) Addition to Reserves for Bad Debts. -- (1) In general. --For purposes of section 166(c), the reasonable addition for the taxable year to the reserve for bad debts * * * shall be an amount equal to the sum of-- * * * (B) the amount determined by the taxpayer to be a reasonable addition to the reserve for losses on qualifying real property loans, but such amount shall not exceed the amount determined under paragraph (2), (3), or (4), whichever amount is the largest, * * * (2) Percentage of taxable income method.-- (A)In general.-- * * * the amount determined under this paragraph for the taxable year shall be an amount equal to the applicable percentage of the taxable income for such year (determined under the following table): ↩
For a taxable year
The applicable percentage
beginning in --
under this paragraph shall be--
1971
54 percent
1972
51 percent
1973
49 percent
1974
47 percent
1975
45 percent
1976
43 percent
1977
42 percent
1978
41 percent
1979 or thereafter
40 percent
3. The parties have agreed on the specific computations which will result from this Court's decision with respect to the issue presented in this Opinion.↩